# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Lisa N. Scofield,**

      **Plaintiff,**

**v.**                                              **Case No. 10-2676-JWL**

**Cypress Leawood, LLC,**
**d/b/a Brookdale Senior Living,**

      **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff filed this employment discrimination suit against defendant asserting claims of sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendant's motion to dismiss or, in the alternative, to stay proceedings and compel arbitration (doc. 6). As explained below, the court grants the motion to stay proceedings and directs the parties to proceed to arbitration on plaintiff's claims.

The Federal Arbitration Act (FAA) "provides that contractual agreements to arbitrate disputes 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 770-71 (10th Cir. 2010) (quoting 9 U.S.C. § 2)). The purpose of the Act is "to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate." *Id.* at 771 (quoting *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 451 (4th Cir. 1997)). The FAA is a "congressional declaration of a liberal

federal policy favoring arbitration agreements." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Section 3 of the Act, 9 U.S.C. § 3, "obliges courts to stay litigation on matters that the parties have agreed to arbitrate; and Section 4, 9 U.S.C. § 4, authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute." *Id.* (citing *Moses H. Cone*, 460 U.S. at 24-27 (discussing scope and operation of FAA)).

The parties do not dispute that they executed an arbitration agreement in May 2008 at the onset of plaintiff's employment with defendant. That agreement expressly precludes the parties "from bringing or raising in court or another forum any dispute that was or could have been brought or raised under the procedures" set forth in the agreement. Pursuant to the agreement, "any controversy or claim arising out of or relating to your employment relationship with us or the termination of that relationship" must be submitted for final and binding arbitration. Plaintiff does not dispute that her claims in this lawsuit are covered by the arbitration agreement. She contends, however, that the agreement is unenforceable for two reasons.

First, plaintiff directs the court to paragraph 1.c. of the agreement, entitled "Internal Efforts." That paragraph states in its entirety as follows:

> As a prerequisite for submitting an employment dispute to mediation and, if necessary, arbitration, both you and we agree to make good faith efforts at resolving any dispute internally on an informal basis through our management channels appropriate to that particular dispute. Only when those internal efforts fail may an employment dispute be submitted to final and binding arbitration under the terms of the Procedure.

According to plaintiff, the necessary prerequisites to arbitration under this paragraph have not

2

been satisfied because neither party ever attempted internal efforts at resolving this dispute. Questions of whether a party has fulfilled the procedural requirements of an arbitration provision are considered questions of procedural arbitrability that are decided by the arbitrator. *See Denhardt v. Trailways, Inc*., 767 F.2d 687, 690 (10th Cir. 1985) ("Procedural arbitrability concerns such issues as 'whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate.'"(quoting *John Wiley & Sons v. Livingston*, 376 U.S. 543, 557 (1964)). As the Circuit explained in *Denhardt*:

> The Court held in *Wiley* that because procedural questions are often inextricably bound up with the merits of the dispute, they should also be decided by the arbitrator. Secondly, the adjudication of procedural questions by the courts would needlessly delay the resolution of the dispute. Thus the court's role is limited to determining whether the parties submitted the "subject matter" of a particular dispute to arbitration. If so, then any attendant procedural issues are for the arbitrator as well.

*Id*. (citations omitted).

Consistent with this principle, district courts faced with provisions similar to the one in the parties' agreement here (*i.e.*, requiring the parties to attempt informal resolution prior to proceeding to arbitration) have concluded that the arbitrator must decide whether those prerequisites have been satisfied. See McKool v. Travelers Indem. Co., 2009 WL 3912524, at *2-3 (N.D. Tex. Oct. 25, 2009); Perez v. Lemarroy, 592 F. Supp. 2d 924, 936-38 (S.D. Tex. 2008). To the extent that the holding in *John Wiley* can be read to include a "rare" exception to the general rule that procedural arbitrability issues are reserved for the arbitrator, that exception would apply, if at all, only when there is no dispute that the parties intended a procedural

3

provision to preclude arbitration and that the breach of the procedural requirement was clear. *See, e.g., Perez*, 592 F. Supp. 2d at 937; *Chauffeurs, Teamsters & Helpers, Local Union No. 414 v. Leath Furniture, LLC*, 2964420, at *6 (N.D. Ind. Nov. 22, 2004). Here, even assuming the parties intended a breach of the "internal efforts" provision to preclude arbitration, it is not at all clear that defendant breached this provision. Plaintiff does not contend that she attempted to initiate informal efforts to resolve her dispute or that defendant refused to engage in such efforts upon plaintiff's request to do so. Moreover, it is at least arguable that plaintiff breached the arbitration agreement in the first instance by filing her lawsuit (presumably without attempting to engage in informal resolution) such that defendant might be relieved from any obligation to comply with the "internal efforts" provision. *See Perez*, 592 F. Supp. at 937. In short, the arbitrator must decide these issues.

Second, plaintiff asserts that the agreement is unenforceable because it contains an impermissible fee-shifting provision. That provision, found at paragraph 1.j. of the agreement, states as follows:

> The parties agree that the costs of the AAA administrative fees and the arbitrator's fees and expenses, will be paid [by] us initially, but as provided by statute or decision of the arbitrator. In other words, all costs could after all is complete be paid by us or you, depending on the outcome. All other costs and expenses associated with the arbitration, including, without limitation, the party's respective attorneys' fees, shall be borne by the party incurring the expenses, unless provided otherwise by statute or decision of the arbitrator.

According to plaintiff, this provision impermissibly exposes plaintiff to arbitration expenses, rendering the arbitral forum an inaccessible alternative for plaintiff. In support of her argument, plaintiff relies primarily on an unpublished decision by the Tenth Circuit, *Kepas v. eBay*, 2010

4

WL 4318585, at *4-5 (10th Cir. Nov. 2, 2010), in which the Circuit held that a similar provision in an arbitration agreement–one which provides the potential for an arbitrator to impose the costs of arbitration on an employee–violates public policy. *Kepas*, however, has no bearing on the issue here because the Tenth Circuit in *Kepas* expressly analyzed the provision under California law and, more specifically, a California Supreme Court decision establishing minimum standards for employer-mandated arbitration agreements, including that such agreements "not require employees to pay . . . any arbitrators' fees or expenses as a condition of access to the arbitration forum." *Id*. at *3 (quoting *Armendariz v. Foundation Health Psychcare Svcs., Inc*., 24 Cal. 4th 83, 99 Cal. Rptr. 2d 745, 6 P.3d 669 (2000)). The Circuit, then, concluded that the provision violated public policy pursuant to *Armendariz*. *Id*. at *4.

In turn, defendant contends that plaintiff has come forward with no evidence of the likelihood that an arbitrator would impose arbitration costs on her; of the probable amount of any such costs; or that any such costs would be prohibitively expensive. Defendant's argument is based upon *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), a case involving a claim under the Truth in Lending Act and the enforcement of a mandatory arbitration clause. In *Green Tree*, the arbitration agreement under which the defendant sought to compel arbitration did not mention the costs of arbitration and, in opposing the motion to compel, the plaintiff argued that the agreement was thus unenforceable because it failed to "affirmatively protect [her] from potentially steep arbitration costs." *Id.* at 82. The Court held that the agreement's silence on such matters did not render the agreement unenforceable. *Id*. Specifically, the court held that the "risk" highlighted by plaintiff was too speculative:

5

>   It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum. But the record does not show that Randolph will bear such costs if she goes to arbitration. Indeed, it contains hardly any information on the matter. As the Court of Appeals recognized, "we lack ... information about how claimants fare under Green Tree's arbitration clause. The record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable. The "risk" that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.

*Id.* at 90-91(footnote and citation omitted). According to the Court, to "invalidate the agreement on that basis would 'undermine the liberal federal policy favoring arbitration agreements.'" *Id.* at 91 (quoting *Moses H. Cone*, 460 U.S. at 24). Ultimately, the court held that "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

While the agreement here is not silent on the issue of arbitration costs, it is similar to the situation in *Green Tree* in that the record here does not establish that plaintiff will necessarily bear the costs of arbitration. And, like *Green Tree*, while there is some "risk" under the agreement that plaintiff could be "saddled" with the costs of arbitration, defendant is correct that plaintiff has no evidence whatsoever concerning the likelihood that an arbitrator would impose arbitration costs on her or the probable amount of any such costs. She has not, then, made any factual showing to support her contention. Finally, while plaintiff requests an opportunity to conduct "limited discovery" to gather such evidence, such evidence presumably would not be discovered from defendant but would be available to plaintiff outside the discovery context in

6

the form of an affidavit from someone with knowledge of whether and how often arbitrators shift the costs of arbitration to employees; the actual costs and fees to which plaintiff might be subject in arbitration; and plaintiff's ability to pay those costs and fees.

In any event, the issue of whether and to what extent plaintiff might be required to pay the costs of arbitration may be largely academic. The agreement executed by the parties provides that the arbitration will be conducted under the Employment Dispute Resolution Rules of the American Arbitration Association (AAA). The most recent version of the AAA rules significantly limit an arbitrator's ability to reallocate costs to an employee in the context of disputes arising out of an employer-promulgated agreement (as opposed to an individually-negotiated agreement) such as the one here. Specifically, the rules require the employer to pay the arbitrator's compensation (unless the employee, post-dispute, voluntarily agrees to pay a portion of the compensation) and preclude reallocation by the arbitrator "except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous." *See* AAA, Employment Arbitration Rules and Mediation Procedures, Rule 48 (Nov. 1, 2009). Similarly, the rules require that administrative fees associated with hearings are "payable by the employer" and that all expenses of the arbitrator "shall be borne by the employer." These fees and expenses are not subject to reallocation unless the arbitrator determines that the claim was filed for purposes of harassment or is patently frivolous. *Id*. While the agreement executed by the parties provides that "[a]ny conflict between the rules and procedures set forth in the AAA rules and those set forth in this Agreement shall be resolved in favor of those in this Agreement," the court finds it highly unlikely that any AAA arbitrator, in

7

light of the AAA's own rules on the subject, would assign the costs of arbitration to an employee in the absence of a finding that the claim was brought in bad faith or was patently frivolous.

Because defendant has shown the existence of an enforceable agreement to arbitrate, the court will direct the parties to proceed to arbitration.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss or, in the alternative, to stay the proceedings and compel arbitration (doc. #6) is granted and the parties are directed to proceed to arbitration on plaintiff's claims. The court will stay the judicial proceedings in this case pending completion of the arbitration process. Counsel for the parties are directed to report to the court in writing no later than September 6, 2011, concerning the status of that arbitration in the event that it has not been terminated earlier. Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED.**

Dated this 7th day of March, 2011, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge